and you may proceed. Judge Wallman, may it please the court, Mr. Cronk. I'm Clemens Erdahl and it's my honor to represent Curtis Dale on appeal before this panel of the court today. Mr. Dale is 45 years old and he represented himself at trial. He was later represented by the public defender at sentencing and he was convicted and sentenced to 300 months or 25 years in prison. By way of brief summary, in our office we call this the case of the empty wrappers. It's about how the empty raptors were discovered and who testified about them. It's very much about how the jury had to have rejected, had to reject, an increased quantity of crack based on empty of one officer. And the case at bar is about who used these wrappers in this disputed testimony to actually calculate the additional quantity of crack, raising the sentence by about 100 months. Most importantly, it is about the lack of a proper finding by a preponderance of the evidence concerning empty wrappers and vague testimony. And I note in the prior argument there was discussion by the court of the very principle that we assert, which is, we cannot, the court cannot rely, that is the sentencing court cannot rely on the pre-sentence investigation once there's an objection. And here there were objections to the finding by the PSR and under rule 32 there are specific things which the trial court is supposed to do to rule differently from what the ruling or what the statement was in the PSIR. The jury found the defendant was responsible for less than 280 grams of, but more than 20 grams. How does presiding at sentencing can rely on the judges, what the judges heard in the trial? Absolutely. And the government points this out in a couple of places and we agree. Basically the, it is well settled that a sentencing judge may consider acquitted conduct when sentencing a defendant and the district court has been free, indeed obliged, to consider whether his involvement had been proved by a preponderance of the evidence. This is from the Radtke case cited by the government and in High Elk, again cited by the government, even post-Booker, the court may find by a preponderance of the evidence facts regarding conduct for which the defendant was acquitted. Judge Richard Arnold in the Hammer case put it well, I believe, when a defendant contests facts alleged in a pre-sentence report and the issue is one on which the United States has a burden of proof, the proper base offense level, for example, which is exactly what we're talking about, or a factor that will enhance the sentencing, the government must produce evidence sufficient to persuade the sentencing court by a preponderance of the evidence that the prosecution's position is correct. The problem here is that the court doesn't make that kind of finding and that the actual testimony at trial about these wrappers and about the fact that the defendant may have made crack cocaine in the past is vague and so Allers testifies, the expert testifies, now you're holding up an item, you're describing of what color. It is several vacuum sealed bags with clear plastic tape wrapping, saran wrap or plastic wrapping, additional kind of black plastic wrap with some wrapping on top of it, also maybe clear plastic vacuum sealed bags inside an additional black bag. Are you arguing a procedural error or a substantive error? Well, both, your honor. Okay, on the procedural error, what case requires the district court to make any finding other than the ultimate finding? What case makes a district judge at sentencing have to do what we don't even require of ALJs and social security cases, which is an elaborate and fully sustainable explanation of reasoning? Well, your honor, the quote I have here, as your honor said, and this is a Randolph case, which is not cited in the brief, but which was based on the Scott case, which is in the briefs. When sentencing court's failure to chart path through disputed or equivocal evidence leaves court of appeals unable to meaningfully review drug quantity findings, the court must remand for further clarification. Yes, your honor. I'm sorry, I didn't discover it until later, but I think I can rely on the Scott case. As I said, the hammer case that the court still has to make a finding by a preponderance of the evidence, and he didn't do that. What the court says, and this is all that the court says in its finding, is that, so when the police executed the search warrant of the storage locker, they found a substantial quantity of cocaine, additional cocaine in plastic bags, and different materials that could be used for making crack, and Mr. Dale also admitted to one of the officers that's what he did. The problem is, as was brought up in the objections and in the sentencing statement of counsel, is that this is relying on an officer named Hufford. It's not even said in the PSR, it's not even said by Judge Jarvie that they're relying on Officer Hufford, but Hufford testified at trial, and he said that he first started talking about this with my client, Mr. Dale, and said that, when did you start making crack? And he said, when I was a sophomore in high school, and that's in the 80s. So what Mr. McEntee said during the sentencing is this interview with Officer Hufford, if the court recalls, was kind of wide-ranging interview, where I believe he testified he had a conversation with Mr. Dale over a couple of hours, going back to the 1980s, and it was not, and that's what was uncovered in the conversation, that it was not at all clear that about the conversation from powder to crack took place within the time frame of these allegations, Your Honor. And remember, the time frame of the offense as charged by the government was over a very short frame of time. Again, it wasn't clear that they were talking about this particular offense. Oh, the conduct isn't limited to that. Well, but the court needs to make some kind of finding that it's talking about what happened during this time period, and it would seem, from what the court says, it's confused about what Mr. Hufford was saying, but the problem is what the court does is it adopts the pre-sentence investigation report, which just takes these empty wrappers, says, okay, there's three. Aller said he wasn't sure it was three. He thought it was maybe two kilos of cocaine, not crack, cocaine, likely three, and the PSR says, okay, we're going to call that three kilos of cocaine, and we're going to convert one to crack. There's got to be some evidence of converting it to crack, and when that conversion took place is pretty important if we're talking about the wrappers that are in this storage facility for a limited period of time. So we can't go back to the 1980s to try to bootstrap that argument, but Judge Jarvie doesn't talk about any of that. He makes no conclusions, no specifications. He simply relies on the PSR, which has been objected to, and as the court was discussing with prior counsel, there's a long history in the Eighth Circuit of saying you can't just rely on the PSR without having some kind of evidence or testimony. The government says that Dale admitted at trial he converted a kilo of powder to crack. Now, I don't think that's exactly what happened. You would have to ask Mr. Kronk about that one. The court does not chart the path. It doesn't make specific findings as to each controversial matter. The year, whether it was 1989 or 2016, the actual quantity, the imputed quantity, the name of the trial witness, although we can assume it's Hufford, and it doesn't state the standard of proof that's so important. The court does not say, I find by a preponderance of the evidence that he did, in fact, convert one kilo of crack cocaine, and so there's a lack, a paucity of the kind of supportive evidence that's necessary, particularly where the jury acquitted the defendant. I see my time has expired for now. I will come back up after Mr. Kronk has his opportunity. Thank you. Well, and then when you do get home, would you send us a 28-J letter citing the case that's not in your brief? Thank you, Your Honor. I will do that. Okay. We'll hear from the government. Mr. Kronk, good morning. You may proceed. May it please the Court, Mr. Erdahl. Good morning. I'm a little surprised that that counsel focused on the clearly winnable argument for the government here, not that the other issues aren't strong for the government as well, but I'll address it briefly, but I'm not sure Mr. Erdahl's not... Well, you can argue them, and then he can respond and rebuttal it. Yeah, that's what I'm concerned about, that he deliberately didn't argue those now, and I don't address them, and then he comes up and raises all the things that I haven't talked about. So I'll start with the drug quantity issue. The evidence here is that Mr. Dale is a crack cocaine dealer, and when they get into his storage unit with valid search warrants, and it's not his storage unit because it's not in his name, but it's the one that he's using, and it's the one that he says to the agents, yeah, you caught me at the right time or on the right day. Expert testimony was that there was at least two empty and possibly three empty kilogram wrappers of cocaine. There's also five ounces of crack cocaine packaged in five separate packages, an ounce apiece. There's a blender or a mixer. There's baking soda, and there's other items that were testified to that are used commonly by drug dealers to convert cocaine to crack cocaine. There's a single kilogram already wrapped. In other words, it hasn't been unwrapped yet, and it's a... So we have a kilogram of powder. We have five ounces of crack. We have empty kilogram wrappers, and then we have Mr. Dale admitting that he just purchased the kilo that we found for $39,500, and he was lamenting that he can't make that much money on powder cocaine, but he can make more money if he converts a kilo into crack and sells it for $1,500 an ounce. And he said that's what he was doing. He was taking cocaine, converting it to crack, and making and charging $1,500 an ounce. He was getting... You mentioned that this was an admission that was in evidence at trial? Yes. Sergeant Hufford testified that they started talking about the high price of cocaine now and how he needs to convert it to crack, and he essentially can make more out of it by cooking it into crack and selling it for $1,500 an ounce. Now, on top of that, there was a woman who testified that since March of 2016 until he was arrested in June, she had purchased an ounce or so of crack from Mr. Dale every two to three weeks. So that's roughly four to five more ounces of crack. Well, if you add those five ounces, I'm being a little generous here, but if you add four of those ounces to the five ounces that we seized, you already had nine ounces, and what you need for 280 grams is 10 ounces. There was another witness who testified that Mr. Dale had provided her small amounts of crack that he does that. Drug quantity is not an issue here, and Judge Jarvie is an experienced district court judge. He knows what the standard of proof is, and he doesn't have to recite, I find each of these facts were proven by a preponderance of the evidence. I think the court is right that when he makes these findings, he's clearly finding by a preponderance of the evidence that these facts are supported by the record, and there's ample support for the conclusion that this involved more than 280 grams of crack. Directing the court's attention to the defendant's arguments about the motions to suppress that he claims he didn't get a hearing for, I would just say these things. The defendant claims that the judge should have held an evidentiary suppression hearing, even though he provided no valid grounds for such a hearing. He further objects that the judge should have literally construed his motions so that his motions arguably raised a Fourth Amendment argument so that he could have a suppression hearing, but there's at least three problems with this. First of all, Mr. Dale decided to proceed pro se. He's not objecting to that. He's saying, I was pro se, I understand that, and we went through, and just so you know, I was there for all this. I was actually advising the police before we ever got a search warrant for that storage unit. I advised the agents on getting a tracker for his car. I escorted the agents to see Judge Jackson to get these warrants. I'm the one who misnumbered the warrants, actually, and the clerk had to correct it by scribbling out the number and putting in the correct number, which was a big issue for Mr. Dale, claiming that all these warrants are invalid because the clerk scribbled out a number and wrote in a different case number on the face of the search warrant. In any event, Dale can't have his cake and eat it too. He waived his right to an attorney. He said he could handle it. Judge Jarvie, or I believe it was Judge Jarvie, told him, there are pitfalls to representing yourself. You're not a trained lawyer. No one is going to help you with your legal issues. Do you understand that? And he said, yes, I do. Well, now he wants to raise that he didn't write a good suppression motion and the judge abused his discretion by not giving him a suppression hearing, but he raised no valid grounds for suppression. In fact, in his brief today, he raises no are no valid grounds for suppression. Changing the number on the outside of a search warrant to change the case number on it does not invalidate an otherwise valid search warrant. Using an administrative subpoena to the storage unit facility to find out who's renting units there does not raise a Fourth Amendment claim. Mr. Dale went out of his way to say it's not even my unit. You can't prove that it's mine. He was disavowing his connection to the unit. He didn't raise standing to object to the search and the judge found that. There's nothing wrong with the probable cause in the affidavit. Mr. Dale seems to ignore that a dog, a trained dog, alerted on that particular unit that had all the drugs in it, which was included in the search warrant and was approved by a magistrate judge. So there's clearly probable cause for these searches. There's no grounds to suppress any of it. And then on top of that, during the trial, he raises a new issue that he wants presented to the actually right at the beginning of court. And the judge said, OK, OK, I'll hear your motion, but not right now. We've got a judge. We've got a jury waiting. And before this is over, you'll get a chance for your hearing. So it's inexplicable to me and the record doesn't support a claim that the defendant was totally denied a hearing because at the conclusion of the evidence, the judge turned specifically to Mr. Dale and said, OK, what about your suppression motion? Do you want to put on additional evidence? Do you have witnesses? What do you want to do? And he said, I just want to argue based on the evidence presented in the trial. So he did get an opportunity for an evidentiary hearing. And in fact, he had, in a way, an evidentiary hearing because he relied on the evidence presented during the trial. And the court found a no valid basis for suppression. If there's no other questions from the panel, I'll yield my time. Very well. Thank you. Thank you for your argument. With respect to the suppression motion, the one point that I wanted to discuss on oral argument I didn't get to before is that the court actually erred in failing to reconsider the second motion because prior to trial, the court found there was no standing. However, after trial, the judge was clearly convinced that Mr. Dale had a privacy interest in the storage units. At the conclusion of trial, and the judge presented it sentencing, several reasons why he did. The court said, well, that's more possessory for a storage locker than, what's more possessory for a storage locker than the key? And this was in the sentencing context, but it was based on the trial evidence. Yeah, it was rented in the name of someone that's hard to connect because he was in Chicago, but it was Mr. Dale that had the key. So we would maintain that at that point, the court should have reconsidered the motion and because standing had been shown and go to the heart of that, which was a contradiction in Mr. Bump's testimony that was raised by Mr. Curtis after trial. With respect to the, Mr. Cronk talks about there were possibly three kilos. I think he's conceding that the expert at trial testified that the wrappers represented two kilos of powder cocaine, likely a third, maybe a third, but it's a far jump from that for the pre-sentence in addition to the actual crack cocaine presented at trial. And the court does have an obligation to look at the evidence that is presented or relied on by the PSR to overcome what had already been decided by the jury that it was not 280 grams. You can't just say, okay, that's four levels higher. So there is some discussion that they might have gone over to, that the court might've gone over to 80 based on the testimony referred to by Mr. Cronk, but now we're going up from a level 28 base offense to a level 32. So it's, it's that, that thousand grams, it sort of pulled out of thin air. Mr. Cronk doesn't give us an explanation for the thousand grams. The PSR didn't, and the judge certainly didn't. What's happened, I believe, is that an argument was made at trial, offense conduct statement comes in, the pre-sentence investigation report, without being specific, if you read paragraph 19, it's really sort of vague. And then there was some subsequent interview with some officer who said they made crack cocaine. What, what actually took place at trial doesn't support a finding of a thousand grams. It, it doesn't really support, uh, a finding of more crack than the 280, but it certainly doesn't support, I think it's up to 1,140. I mean, they're always in terms of ranges. So give me a site that I can see where . . . It's in my pocket. Oh yeah, we often get it. Yeah, it sure is, when it comes to, when it comes to drug quantity. So crack cocaine between 196 and 280 grams is 28. Between 280 and 840, it's 30. The 32, which Judge Jarvie, uh, endorsed the finding of the PSR, is 840 to 2.8 kilograms. And then he was actually sentenced at a higher level. There's some other enhancements, but it's basically a two or four level problem, um, that, that really isn't articulated. Um, I think it's, it's brought up very thoroughly by Mr. McEntee, the, um, uh, the, the, um, uh, public defender who was representing, uh, Mr. Dale at trial when it became pretty apparent he couldn't represent himself. Um, but again, in, in Hufford's discussion is, is well described by McEntee and it's in the trial transcript and he says, well, I was just asking . . . I've known Curtis Dale for a long time. I'm the Rock Island Police Department officer. And so Sergeant Hufford says, how'd you get started doing this? Well, I was a sophomore in high school and somebody taught me how to make crack or cocaine into crack. That doesn't deal with the empty plastic wrappers that were only in the storage unit for a limited number of months. It's way out of left field and, and the judge just does not give you a roadmap from which you can make a decision at this point. Therefore, we would ask you to remand, uh, for resentencing. Thank you very much. Well, thank you.